**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PABLO "PAUL" GUTIERREZ, | § | |
| and MARIA LOURDES GUTIERREZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. H-15-778 |
| V. | § | |
| | § | |
| TRACTOR SUPPLY COMPANY; | § | |
| JIAONAN DAFENG METAL PRODUCTS | § | |
| CO., LTD.; 1497111 ONTARIO INC. O/A | § | |
| DAFENG METAL PRODUCTS; and | § | |
| TEST-RITE PRODUCTS CORP. | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM AND ORDER

This products-liability case arises from an "exploding" tire. The plaintiffs, Pablo "Paul"

Gutierrez and Maria Lourdes Gutierrez (together, "Gutierrez"), sued multiple defendants, including

Test-Rite Products Corporation, Jiaonan Dafeng Metal Products Company, Tractor Supply

Company, and Ontario. (Docket Entry No. 32). Gutierrez has moved for leave to file a third

amended complaint. (Docket Entry No. 62). He filed the motion for leave after the April 10, 2017

deadline for amending pleadings had passed. Two defendants, Ontario and Test-Rite Products,

opposed the motion. (Docket Entry Nos. 68, 88). Another defendant, Tractor Supply, replied,

supporting Gutierrez's motion for leave to amend. (Docket Entry No. 70). Test-Rite Products also

moved for summary judgment on the ground that the statute of limitations barred Gutierrez's claims,

Gutierrez responded, and Test-Rite Products replied. (Docket Entry Nos. 67, 82, 85).

Based on the pleadings, the briefing, the record, the arguments of counsel at the July 10,

2018 hearing, and the applicable law, the court grants in part and denies in part Gutierrez's motion for leave to file his proposed third amended complaint. Specifically, Gutierrez may add or change the defendants' addresses for their counsel of record; allege that Ontario and Dafeng are one and the same entity; and clarify the factual descriptions. Because the court also grants in part and denies in part Test-Rite Product's motion for summary judgment, Gutierrez may assert a breach-of-implied-warranty-of-merchantability claim against Test-Rite International in Test-Rite Products's place, but he cannot amend to add a discovery-rule pleading or assert personal-injury claims against Test-Rite International. The result is that Gutierrez's personal-injury claims against Test-Rite Products are time-barred, while the breach-of-implied-warranty-of-merchantability claim remains.

Gutierrez is granted leave to file the following pleading amendments set out in his proposed third amended complaint:

- Gutierrez may add or change the defendants' addresses for their counsel of record as he has done in his proposed third amended complaint;

- Gutierrez may add an allegation that Ontario and Dafeng "are essentially one and the same" entity as he has done in his proposed third amended complaint;

- Gutierrez may clarify the factual descriptions as he has done in his proposed third amended complaint; and

- Gutierrez may assert a breach-of-implied-warranty-of-merchantability claim against Test-Rite International in Test-Rite Products's place.

Paul and Maria Gutierrez must submit their third amended complaint reflecting these rulings no later than **August 13, 2018**.

The reasons for the rulings are explained below.

## I.      Background

National Oilwell Varco employed Paul Gutierrez to perform mechanical servicing on oilfield

service equipment. Gutierrez's job duties included replacing tires on Zap-Lok 5500-T equipment used in the oilfield. When Gutierrez arrived at work on January 29, 2014, some of the tires on the Zap-Lok were flat or low. Gutierrez alleges that he bought repair materials, returned to the work site, and began airing up the tires on the Zap-Lok. (Docket Entry No. 32 ¶ 8). He alleges that one of the tires exploded, "launching the outer rim like a projectile into [Gutierrez's] left leg, causing instant injury." (*Id.* ¶ 9).

On July 27, 2015, Gutierrez filed a first amended complaint naming Tractor Supply, Dafeng, and Tricam Industries as defendants and asserting a breach-of-implied-warranty-of-merchantability claim and products-liability claims for negligence, strict liability, failure to warn, and gross negligence. (Docket Entry No. 13). On June 6, 2016, Gutierrez voluntarily dismissed Tricam. (Docket Entry No. 18). On August 8, 2017, Gutierrez added Test-Rite Products as a defendant in his second amended complaint, alleging that it was involved in the tire's importation and rim assembly. (Docket Entry No. 32). Gutierrez also added "Ontario o/a Dafeng," alleging that it imported the tire. (*Id.*).

During the April 25, 2018 deposition of a Tractor Supply corporate representative, Gutierrez learned that the proper defendant was Test-Rite International, not Test-Rite Products, and that Ontario and Dafeng may be the same entity. (Docket Entry No. 32 ¶¶ 3, 4). On May 21, 2018, after the April 10, 2017 amended pleadings deadline had passed, (Docket Entry No. 23 ¶ 1), Gutierrez moved to file a third amended complaint proposing five changes: (1) adding or changing the defendants' addresses for their counsel of record; (2) adding an allegation that Ontario and Dafeng "are essentially one and the same" entity; (3) renaming "Test-Rite Products" to "Test-Rite International"; (4) adding and clarifying factual descriptions about the injury; and (5) pleading the

discovery rule.  (Docket Entry Nos. 62, 63).  Test-Rite Products responded, moving for summary judgment and opposing Gutierrez's motion for leave to amend.  (Docket Entry Nos. 67, 68).  Test-Rite Products argues that the statute of limitations bars Gutierrez's claims against it and any other Test-Rite entities not named in the first or second amended complaints, including Test-Rite International.  Ontario also opposed Gutierrez's motion for leave to amend, arguing that Gutierrez did not timely sue it for his personal-injury claims and that any allegation that Dafeng and Ontario are the same entity is futile.  (Docket Entry No. 88).

This opinion first addresses Test-Rite Products's motion for summary judgment, then Gutierrez's motion for leave to amend.

## II.     The Legal Standard

### A.     Summary Judgment

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted); *see also* Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'"  *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to

the absence of evidence and thereby shift to the non-movant the burden of demonstrating...that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)). A fact is material if "its resolution could affect the outcome of the actions." *Aly v. City of Lake Jackson*, 605 F. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017).

### B.     The Statute of Limitations

Courts apply "state statutes of limitations in diversity cases." *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 373 (5th Cir. 2011). Under Texas law, "a person must bring suit for . . . personal injury . . . not later than two years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.003(a). "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Tex. Bus. & Com. Code § 2.725(a); *see also Garcia v. Tex. Instruments,* 610 S.W.2d 456, 465 (Tex. 1980) (the four-year statute of limitations applies to causes of action under § 2.725(a) even if other personal-injury claims were time-barred).

5

"Causes of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011). Texas recognizes the discovery rule, which "tolls the limitations period until a claimant discovers or in the exercise of reasonable diligence should have discovered the injury caused by the wrongful act of another[.]" *Lozada v. Farrall & Blackwell Agency, Inc.*, 323 S.W.3d 278, 289 (Tex. App.—El Paso 2010, no pet.). The Texas Supreme Court has explained, however:

> [T]he discovery rule does not linger until a claimant learns of actual causes and possible cures. Instead, it tolls limitations only until a claimant learns of a wrongful injury. Thereafter, the limitations clock is running, even if the claimant does not yet know: the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.

*PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93–94 (Tex. 2004); *see also Exxon Corp.*, 348 S.W.3d at 207 (confirming *PPG Industries*'s rule). When a plaintiff knows that he has been injured, he "must exercise reasonable diligence to investigate the suspected harm and file suit, if at all, within the limitations period." *Exxon Corp.*, 348 S.W.3d at 208. "When a cause of action accrues is normally a question of law." *Id.* at 202.

### C. Leave to Amend

#### 1. Rule 15 and Rule 16

Two standards control when a court may grant leave to file an amended pleading. Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should "freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Rule 16(b) provides that once a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). Rule 16(b) requires a district court to enter a scheduling order setting deadlines,

including for pleading amendments. *See* Fed. R. Civ. P. 16(b)(1). By limiting the time for amending pleadings, Rule 16(b) is designed to ensure that "at some point both the parties and the pleadings will be fixed." *Id.*, Committee Note, 1983 amendment. A district court has "broad discretion" in ruling under Rule 16 and Rule 15, "to preserve the integrity and purpose of the pretrial order" and to manage the case fairly and efficiently. *Hackett v. United Parcel Serv.*, ___ F. App'x ___, 2018 WL 2750297, at *2 (5th Cir. June 6, 2018) (citation omitted).

The Rule 16(b) "good cause" standard, rather than the "freely given" standard of Rule 15(a), governs a motion to amend filed after the deadline set in a scheduling order. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010). The "good cause" standard requires a party "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (internal citations omitted). Courts consider four factors in deciding if there is good cause to amend a scheduling order: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (quotation marks and citations omitted).

If the movant satisfies Rule 16(b)'s requirements, the court determines whether to grant leave to amend under the more liberal Rule 15(a)(2) standard. *S&W Enters.*, 315 F.3d at 536. A district court reviewing a motion to amend pleadings under Rule 15(a) may consider factors such as "undue delay, bad faith or dilatory motive[,] . . . undue prejudice to the opposing party . . ., and futility of amendment." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005).

### 2. Relation-Back

The Fifth Circuit has held that pleading amendments, including whether an amended pleading relates back to the original pleading, "is a procedural matter to be governed by federal law." *Welch v. La. Power & Light Co.*, 466 F.2d 1344, 1345 (5th Cir. 1972) (citations omitted). "Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). Relation-back serves "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Id.* at 550 (citing The Advisory Committee's 1966 Note, 122; 3 MOORE'S FEDERAL PRACTICE §§ 15.02[1], 15.19[3][a] (3d ed. 2009)).

In 1991, Rule 15(c) was revised "to make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law," which generally "will be state law." FED. R. CIV. P. 15(c), Committee Note, 1991 amendment. Rule 15(c) provides:

(1) ***When an Amendment Relates Back***. An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (i) received such notice of the action that it will not be
> prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would
> have been brought against it, but for a mistake
> concerning the proper party's identity.

FED. R. CIV. P. 15(c). "[T]he amended Rule 'is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification.'" *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998).

Rule 15(c)(1)(A) and Rule 15(c)(1)(C) present two ways that a plaintiff amending to change a defendant's name can assert the claims against the newly named defendant and have them relate back to the original complaint. First, an amendment relates back if "the law that provides the applicable statute of limitations" permits it. FED. R. CIV. P. 15(c)(1)(A). If state law provides the statute of limitations and "affords a more forgiving principle of relation back than the one provided in th[e] rule," the state law applies. FED. R. CIV. P. 15(c), Committee Note, 1991 amendment; *see also Balle v. Nueces Cty., Tex.*, 690 F. App'x 847, 850 (5th Cir. 2017) (interpreting Texas state law to determine if it permitted relation-back under Rule 15(c)(1)(A)); *Turnage v. McConnell Techs.*, 671 F. App'x 307, 309 (5th Cir. 2016) (state common law on relation-back applies when a state statute provided the statute of limitations). Texas law provides the applicable limitations period.

Texas law on relation-back distinguishes between changing the name of a misnamed defendant from adding a different defendant for one who was misidentified. *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (per curiam) (citation omitted). "Misidentification—the consequences of which are generally harsh—arises when two separate legal entities exist and a plaintiff mistakenly sues an entity with a name similar to that of the correct entity." *Id.* (citation omitted). "If a 'plaintiff is mistaken as to which of two defendants is the

9

correct one and there is actually existing a corporation with the name of the erroneously named defendant (misidentification), then the plaintiff has sued the wrong party and limitations is not tolled.'" *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 594 (Tex. 2017) (citation omitted). The Texas Supreme Court has identified an exception to this rule. "The statute of limitations will be tolled in mis-identification cases if there are two separate, but related, entities that use a similar trade name and the correct entity had notice of the suit and was not misled or disadvantaged by the mistake." *Flour Bluff Indep. Sch. Dist. v. Bass*, 133 S.W.3d 272, 274 (Tex. 2004).

 "In contrast, a 'misnomer occurs when a party misnames itself or another party, but the correct parties are involved.'" *Rincones,* 520 S.W.3d at 594 (citation omitted). Texas courts "generally allow parties to correct a misnomer if it is not misleading." *Id.*

The second way in which Rule 15(c) relation-back applies is under a federal standard. Rule 15(c)(1)(C) applies when an amendment concerns the conduct, transaction, or occurrence set out in the original pleading and when "[w]ithin 120 days of filing the original complaint—the period provided by Rule 4(m)—the party sought to be added . . . had notice of the action and either kn[ew] or should have known that the action would have been brought against it absent a mistake as to identity." FED. R. CIV. P. 15(c)(1)(C). "The Fifth Circuit has interpreted Rule 15(c)(1)(C) to refer 'only to substituting or changing a defendant rather than adding a new defendant,' except in instances involving misnomer of a defendant." *Mitts v. Sikorsky Aircraft Corp.*, No. Civ. A. H–10–5164, 2013 WL 12138546, at *3 (S.D. Tex. Mar. 5, 2013) (quoting *Tapp v. Shaw Envtl., Inc.*, 401 F. App'x 930, 932 (5th Cir. 2010) (per curiam)). "[F]ailing to identify individual defendants cannot be characterized as a mistake." *Miller v. Mancuso*, 388 F. App'x 389, 391 (5th Cir. 2010). The Fifth Circuit infers notice to a proposed added or substituted defendant "if there is an identity

of interest between the original defendant and the defendant sought to be added or substituted." *Jacobsen*, 133 F.3d at 320 (citation omitted). "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* (citation omitted). "In this regard, notice may be imputed to the new party through shared counsel." *Id.* (citation omitted).

The Texas state-law standard for misidentification is more forgiving than the Fifth Circuit identity-of-interest standard. In this case, the Texas standard is properly used under Rule 15(c)(1)(A), not the federal standard under Rule 15(c)(1)(C). FED. R. CIV. P. 15(c)(1)(A); FED. R. CIV. P. 15(c)(1)(C).

## III. Analysis

### A. Test-Rite Products' Motion for Summary Judgment

#### 1. The Breach-of-Implied-Warranty-of-Merchantability Claim against Test-Rite Products

Gutierrez argues that his breach-of-implied-warranty-of-merchantability claim against Test-Rite Products is timely because the statute of limitations is four years. Gutierrez was injured on January 29, 2014. The four-year statute of limitations expired on January 29, 2018. *See, e.g.*, *Fisher v. Westmont Hospitality*, 935 S.W.2d 222, 225–26 (Tex. App.—Houston [14th Dist.] 1996). Gutierrez added Test-Rite Products as a defendant in his second amended complaint, filed on August 8, 2017, over five months before the breach-of-implied-warranty-of-merchantability statute of limitations expired. (Docket Entry No. 32).

Test-Rite Products was timely sued on this cause of action and its summary judgment motion based on limitations is denied. Because Test-Rite International is not moving for summary judgment on this cause of action, whether the claim against it was timely is not before the court.

### 2.      The Personal-Injury Claims Against Test-Rite Products

Test-Rite Products argues that Gutierrez cannot assert personal-injury claims because the two-year statute of limitations has expired.  Gutierrez was injured on January 29, 2014.  The statute of limitations expired on January 29, 2016.  Gutierrez added Test-Rite Products as a defendant for the first time in his second amended complaint filed on August 8, 2017, almost 3 years and 8 months after his injury and nearly 1 year and 8 months after the statute of limitations expired.  (Docket Entry No. 32).   The statute of limitations bars Gutierrez's personal-injury claims against Test-Rite Products.

Gutierrez's personal injury claims against Test-Rite Products are time-barred.  Test-Rite Products' summary judgment motion on these claims is granted.

### 3.      The Discovery Rule

 Gutierrez argues that the discovery rule tolled the statute of limitations until he learned in discovery in this lawsuit that Test-Rite Products had imported the tire.  Test-Rite Products argues that the discovery rule does not apply because Gutierrez knew he was injured on January 29, 2014.

In Texas, the discovery rule is "a plea in confession and avoidance." *Smith v. McKinney*, 792 S.W.2d 740, 742 (Tex. App.—Houston [14th Dist.] 1990, writ. denied) (quoting *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517, 518 (Tex. 1988)).  "A matter in avoidance of the statute of limitations that is not raised affirmatively in the pleadings will, therefore, be deemed waived."  *Id.*  Gutierrez did not plead the discovery rule in his second amended complaint, waiving the right to assert that the discovery rule tolls the statute of limitations.

Even if Gutierrez sufficiently pleaded the discovery rule, it would not apply to toll the statute of limitations.  The statute of limitations does not accrue when a plaintiff discovers who committed

his injury. The statute of limitations accrues when a plaintiff discovers that he was injured. *See, e.g.*, *Drake v. Navistar Int'l Corp.*, 611 F. App'x 235, 236 (5th Cir. 2015) (because the plaintiff "understood the nature of the alleged defect and his injuries, as well as the manner in which those injuries allegedly occurred, on the date of the alleged incident," the statute of limitations barred him from suing a different defendant that he later discovered to be the cause of his injury). Gutierrez knew he was injured on January 29, 2014 when the tire "exploded" and hit his leg. The statute of limitations began to run at that time, not when Gutierrez learned years later that Test-Rite Products, or another Test-Rite entity, may have been involved in that injury.

Test-Rite Products's motion for summary judgment, (Docket Entry No. 67), is granted as to the personal-injury claims and denied as to the breach-of-implied-warranty-of-merchantability claim.

### B.      Gutierrez's Motion for Leave to Amend

#### 1.      Amending to Include Counsel of Record Addresses and Certain Factual Descriptions

Gutierrez moves to amend his complaint to change defendants' counsels' addresses and clarify certain factual descriptions. He asserts that he learned this information in discovery. Neither Test-Rite Products nor Ontario oppose these changes in their responses to Gutierrez's motion for leave to amend. There is no evidence that Gutierrez acted in bad faith or was dilatory in moving to amend to make these changes, or that adding them would impede the defense. The proposed changes clarify or correct relief sought from each defendant, including aspects unrelated to the merits.

The court grants Gutierrez's leave to amend to change counsels' addresses and clarify certain factual descriptions.

### 2. Amending to Name Test-Rite International and Allege the Discovery Rule

Gutierrez also moves for leave to change the name of the defendant "Test-Rite Products" to "Test-Rite International" and to allege the discovery rule to toll limitations. Test-Rite Products argues that the statute of limitations has expired and that the discovery rule cannot toll limitations as to any claims against any Test-Rite entity, making amendment futile. Gutierrez argues that the discovery rule tolls the statute of limitations and that allowing him to amend to plead the discovery rule is important. Tractor Supply, a defendant, argues in support of Gutierrez's motion for leave to amend that because Tractor Supply's representative has testified that Test-Rite played a substantial role in the inspection, shipment, and testing of the tire, Tractor Supply plans to cross-claim against Test-Rite International. Tractor Supply argues that judicial resources will be preserved if Gutierrez's motion for leave to amend is granted, avoiding the need for a separate complaint.

The court previously concluded that Gutierrez timely filed his breach-of-implied-warranty-of-merchantability claim against Test-Rite Products; that Gutierrez untimely filed his personal-injury claims against Test-Rite Products; and that the Texas discovery rule did not toll the statute of limitations.

Because the discovery rule does not toll the statute of limitations for any of Gutierrez's claims, and because Gutierrez did not timely sue Test-Rite Products for personal-injury claims, amendments adding discovery-rule tolling allegations and changing "Test-Rite Products" to "Test-Rite International" for personal-injury claims would be futile. Leave to amend to add a discovery-rule pleading and change "Test-Rite Products" to "Test-Rite International" as to the personal-injury claims is denied.

Because Gutierrez timely sued Test-Rite Products for the breach of implied warranty of

merchantability, amending to change the name of the defendant "Test-Rite Products" to "Test-Rite International" for this claim is not futile. Gutierrez presented a reasonable explanation for why he did not originally sue Test-Rite International. He did not know until the April 25, 2018 deposition of a Tractor Supply corporate representative that he may have sued the wrong Test-Rite entity. There is no evidence that this late discovery was due to a lack of diligence on Gutierrez's part, or that Gutierrez could have identified Test-Rite International sooner with reasonable effort. Allowing Gutierrez the opportunity to sue the proper entity for his alleged harms is important. Test-Rite Products did not argue that it would be prejudiced if Test-Rite International is renamed as the correct defendant in place of Test-Rite Products. Test-Rite International will have the opportunity to answer and to assert any relevant defense. These factors weigh in favor of good cause for leave to amend.

Test-Rite Products argues that Gutierrez's motion for leave to amend to change "Test-Rite Products" to "Test-Rite International" for any of his claims is futile because the statute of limitations for all claims has since expired. Gutierrez filed his motion for leave to change "Test-Rite Products" to "Test-Rite International" on May 21, 2018, almost four months after the breach-of-implied-warranty-of-merchantability statute of limitations expired. Because Gutierrez moved for leave to assert his claims against Test-Rite International in Test-Rite Products's place after the statute of limitations expired, he can recover against Test-Rite International only if the claims relate back to those asserted against Test-Rite Products in his second amended complaint.

Gutierrez first argues that misnaming "Test-Rite International" as "Test-Rite Products" in his second amended complaint makes this a case of misnomer only. Test-Rite Products is a Test-Rite International subsidiary, and Test-Rite International is a "completely separate entit[y]," making this a case of misidentification, not misnomer. (Docket Entry Nos. 68 at 4; 76 at 1). Test-Rite

Products presents evidence that Tractor Supply had two separate contracts, one with Test-Rite Products and one with Test-Rite International, showing that the two companies are separate legal entities. (Docket Entry No. 76, Ex. A, Ex. B). Gutierrez does not identify or submit evidence to the contrary. (Docket Entry No. 82).

Test-Rite Products also argues that Test-Rite International is believed to have its own counsel. (Docket Entry No. 68 at 4). Gutierrez argues that this is unlikely because Test-Rite Products and Test-Rite International are listed as the two primary insureds on the same insurance policy under which Test-Rite Products is now being defended. (Docket Entry No. 69, Ex. B).

The record evidence shows that Test-Rite Products and Test-Rite International are two separate entities, making this a misidentification case. *See, e.g.*, *Enserch Corp. v. Parker*, 794 S.W.2d 2, 5 (Tex. 2009) (a wholly owned subsidiary and a parent company are two separate entities; if the plaintiff sues the wrong entity, that is a misidentification issue). Under Texas law applying Rule 15(c)(1)(A), claims against misidentified parties relate back to the claims against the party that the plaintiff sued before the statute of limitations expired only if the two entities are related, the two entities use a similar trade name, and the correct entity had notice of the suit and was not misled or disadvantaged by the mistake.

Test-Rite Products admits that it is Test-Rite International's subsidiary, but the record evidence does not show whether Test-Rite International had notice of the suit or would be disadvantaged by Gutierrez's mistake. Gutierrez points to evidence that supports an inference that Test-Rite International and Test-Rite Products may have the same legal counsel, which in turn can support an inference that Test-Rite International was aware of this lawsuit and obtained information about Gutierrez's claims and the evidence through Test-Rite Products. *See Enserch Corp.*, 794

S.W.2d at 6 (denying summary judgment because, even though the plaintiff mistakenly sued a subsidiary instead of the proper parent company, fact issues existed as to whether the parent company would be prejudiced by any claims brought against it due to the fact that the companies had the same counsel and the parent company was aware of the lawsuit).

The record evidence is not clear that Gutierrez's proposed breach-of-implied-warranty-of-merchantability claim against Test-Rite International would relate back to his claim against Test-Rite Products. It is not futile to allow Gutierrez to amend his complaint to assert the claim and allow the parties the opportunity to raise the issue on an expanded record showing whether relation-back tolls the statute of limitations for this claim.

The motion for leave to change "Test-Rite Products" to "Test-Rite International" for the breach-of-implied-warranty-of-merchantability claim is granted.

### 3. Amending to Refer to Ontario and Dafeng as the Same Entity

Gutierrez moves to amend to add an allegation that Ontario and Dafeng are "one and the same" entity and that both companies are manufacturers of the tire and rim assembly that caused Gutierrez's injury. (Docket Entry No. 63 ¶ 9). Gutierrez sued Dafeng in his first amended complaint on July 27, 2015, less than two years after his injury on January 29, 2014. Gutierrez added Ontario as a defendant in his second amended complaint on August 8, 2017, more than two years, but less than four years, after his injury. Gutierrez alleged, and Ontario agrees, that Ontario was formed and is operated in Canada. (Docket Entry Nos. 32 ¶¶ 4; 88 at 2). Dafeng was formed and operates in China. (Docket Entry Nos. 32 ¶¶ 3; 88 at 2).

At an April 25, 2018 deposition of a corporate representative from Tractor Supply, Gutierrez learned that Paul Liu, who is an officer at both Dafeng and Ontario, acted as a representative for

both companies when he signed vendor agreements to sell tires to Tractor Supply. (Docket Entry No. 62 ¶ 3). Liu was also Tractor Supply's primary point of contact for both Dafeng and Ontario. (*Id.*). Gutierrez argues that this testimony shows that the companies are the same entity.

Ontario concedes that Gutierrez timely sued on the breach-of-implied-warranty-of-merchantability claim. (Docket Entry No. 88 at 2). Ontario argues that Gutierrez did not timely sue on the personal-injury claims, but it has not yet moved for summary judgment on this issue. Instead, Ontario opposes Gutierrez's request to refer to Dafeng and Ontario as "one and the same entity." If Gutierrez is able to prove that Dafeng and Ontario are the same entity, Gutierrez's timely personal-injury claims against Dafeng will also apply to Ontario, even though he sued Ontario after the statute of limitations expired. *See, e.g.*, *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 575 (Tex. 1975) (a suit against a corporation tolls limitations as to the corporation's alter ego).

Ontario argues that any amendment that Dafeng and Ontario are the same entity is futile because Gutierrez is trying to claim an "alter ego/corporate veil piercing theory," which is insufficiently alleged because Gutierrez does not allege facts showing that Dafeng and Ontario committed fraud and does not allege whether Chinese, Canadian, or Texas law applies to determine if Ontario and Dafeng are "one and the same." (Docket Entry No. 88).

Gutierrez argues that he seeks leave to amend to refer to Dafeng and Ontario as "one and the same" entity based on three Texas law theories: misnomer theory, successor-liability theory, and single-business-enterprise theory. (Docket Entry No. 90). Texas misnomer theory does not apply here. Misnomer theory allows for untimely claims asserted against a properly named defendant to relate-back to timely claims asserted against a misnamed defendant. Gutierrez is not arguing that

he misnamed Ontario as Dafeng.  Instead, he is arguing that Ontario and Dafeng are the same entity.

A successor-liability, single-business-enterprise, alter-ego or other form of corporate instrumentality theory could support an allegation that Dafeng and Ontario are "one and the same." "Under the 'single business enterprise' doctrine, separate corporations may operate with integrated resources in pursuit of a single business purpose."  1 Fletcher Cyc. Corp. § 43 (2017).  "[T]he corporate veil may be pierced if there is such a unity of interest and ownership that the independence of the corporation in effect ceases or has never begun, and where an adherence to the fiction of separate identity would defeat justice and equity arising out of an operation conducted by one corporation for the benefit of the whole enterprise."  *Id.*  "Under the alter ego doctrine, when a corporation is the mere instrumentality or business conduit of another corporation or person, the corporate form may be disregarded," which is also known as piercing the corporate veil.  *Id.* § 41.10. Under successor-liability theory, "a successor to a manufacturer might be held liable for product defects caused by the manufacturer . . . ."  *Id.* § 7123.30.  The elements needed to prove that a corporation is an alter ego of another corporation, to prove that a corporation is liable as a successor, or to prove that two corporations are a single business enterprise, vary across jurisdictions, making pleading requirements depend on the law that applies.  *See id.* §§ 41.28, 43.72.

In diversity cases, the law of the forum state governs the choice-of-law inquiry and decision. *See Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016) (using the forum state's choice-of-law standards to govern which jurisdiction's law should be used to decide if a corporation could be sued for the acts of another affiliated corporation under single-business-enterprise theory).  "Under choice of law principles, Texas courts apply the law of the jurisdiction that has the most significant relationship to the particular substantive issue to be resolved."

*Longview Energy Company v. Huff Energy Fund LP*, 533 S.W.3d 866, 872 (Tex. 2017).   To determine which jurisdiction has the most significant relationship to the substantive issue, courts consider:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

*Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 772 (5th Cir. 2016).   The Fifth Circuit has held, applying similar standards under Lousiana's choice-of-law rules, that the law of the state of incorporation should govern.   *See Energy Coal*, 836 F.3d at 463.   Here, the law of incorporation could be Canadian or Chinese law, which would in turn influence the pleading and proof requirements.

Gutierrez does not allege, nor does he move to amend to add an allegation, identifying which law should govern his theory supporting his claim that Ontario and Dafeng are "one and the same." Ontario argues that by not alleging the law that applies, Gutierrez's amendment is futile.   But failing to allege which law applies does not waive the opportunity to argue successor-liability, alter-ego, or single-business-enterprise theories under foreign law.

Federal Rule of Civil Procedure 44.1 provides:

> A party who intends to raise an issue about a foreign country's law

> must give notice by a pleading or other writing. In determining
> foreign law, the court may consider any relevant material or source,
> including testimony, whether or not submitted by a party or
> admissible under the Federal Rules of Evidence. The court's
> determination must be treated as a ruling on a question of law.

FED. R. CIV. P. 44.1. Rule 44.1 "does not attempt to set any definite limit on the party's time for

giving the notice of an issue of foreign law; in some cases the issue may not become apparent until

the trial and notice then given may still be reasonable." FED. R. CIV. P. 44.1, Committee Note, 1966

amendment; *see also Thyssen Steel Co. v. M/V Kavo Yerakas*, 911 F. Supp. 263, 266 (S.D. Tex.

1996) ("The rule is not intended to be a strict time bar to parties attempting to raise a choice of law

question."). "In considering the reasonableness of notice, the court should weigh '[t]he stage which

the case had reached at the time of the notice, the reason proffered by the party for his failure to give

earlier notice, and the importance to the case as a whole of the issue of foreign law sought to be

raised.'" *Wavelinq, Inc. v. JDS Lightwave Prods. Grp., Inc.*, 289 F. App'x 755, 766–67 (5th Cir.

2008). "In the absence of sufficient proof to establish with reasonable certainty the substance of the

foreign principles of law, the modern view is that the law of the forum should be applied." *Malin*

*Int'l Ship Repair & Drydock, Inc. v. Oceanografia*, 817 F.3d 241, 247 (5th Cir. 2016).

It is not futile to allow Gutierrez to allege that Ontario and Dafeng are "one and the same."

Gutierrez still has time to give notice that he intends to rely on an alter-ego, successor-liability,

single-business-enterprise, or other piercing-the-corporate-veil theory under Chinese or Canadian

law. *See, e.g.*, *Northrop Grumman Ship Sys. v. Ministry of Def.*, 575 F.3d 491, 497 (5th Cir. 2009)

(notice was given after an 18-month delay but was still reasonable because the opposing party had

time to research foreign law and was not unfairly surprised); *Zoch v. Daimler*, No. Civ. A.

4:17-CV-578, 2017 WL 5177959, at *2 (E.D. Tex. Nov. 8, 2017) (notice of foreign law that was

given before discovery deadline was reasonable); *Thyssen Steel*, 911 F. Supp. at 266–67 (notice of foreign law that was first provided "on remand, nearly four years after the suit was filed" was given within a reasonable time). If Gutierrez does not sufficiently give notice of the foreign law he seeks to apply, Texas law, which is the law of the forum, may govern. Whether Gutierrez's pleading allegations are sufficient will depend on the theory he asserts and the elements of that theory under the applicable law. Ontario's argument that Gutierrez's claims are futile because he has failed to allege which, if any, foreign law applies, is unpersuasive. The motion for leave to amend to allege that Ontario and Dafeng are "one and the same" entity is granted.

## IV. Conclusion

Test-Rite Products' motion for summary judgment, (Docket Entry No. 67), is granted as to the personal-injury claims and denied as to the breach-of-implied-warranty-of-merchantability claim. Gutierrez's motion for leave to file a third amended complaint, (Docket Entry No. 62), is granted in part and denied in part. Gutierrez is granted leave to file the following pleading amendments set out in his proposed third amended complaint:

- Gutierrez may add or change the defendants' addresses for their counsel of record as he has done in his proposed third amended complaint;

- Gutierrez may add an allegation that Ontario and Dafeng "are essentially one and the same" entity as he has done in his proposed third amended complaint;

- Gutierrez may clarify the factual descriptions as he has done in his proposed third amended complaint; and

- Gutierrez may assert a breach-of-implied-warranty-of-merchantability claim against Test-Rite International in Test-Rite Products's place.

Paul and Maria Gutierrez must submit their third amended complaint reflecting the rulings no

later than **August 13, 2018**.

SIGNED on July 26, 2018, at Houston, Texas.

Lee H. Rosenthal

Chief United States District Judge